UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGI FAIRCHILD-LITTLEFIELD, | **1:19-cv-01579-NONE-GSA-PC** |
| Plaintiff, | **ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND (ECF No. 13.)** |
| vs. | |
| ATINELLO, et al., | **THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT** |
| Defendants. | |

## I.   BACKGROUND

Gigi Fairchild-Littlefield ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action under 42 U.S.C. § 1983.   On November 5, 2019, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On January 2, 2020, Plaintiff filed the First Amended Complaint as a matter of course, which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 13.)

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

## III.    SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Central California Women's Facility (CCWF) in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the First Amended Complaint allegedly occurred.  Plaintiff names as defendants Valerie Attinello (Nurse Practitioner), Radiology Report Writer (name unknown), Sergeant Alamo, Correctional Officer (C/O) N. Snider, CCWF Medical Staff, and J. Espinosa (Former Warden) (collectively, "Defendants").  A summary of Plaintiff's allegations follows:

On December 30, 2018, Plaintiff tripped and fell on the asphalt.  She put in a co-pay saying it felt like bone, and she was given crutches.  She could not use the crutches over a long distance, so she requested a wheelchair.  She requested x-rays and was given a knee brace. Plaintiff put in a co-pay stating it felt like more damage was being done by putting weight on her right knee.  On January 16, 2019, Plaintiff could not walk and was in pain.  The TTA [*sic*] came and took her to x-ray, after which she was given a wheelchair.  Plaintiff was so relieved.  The next day, for no reason, defendant Attinello took her wheelchair and assigned her a walker knowing she couldn't walk.  The wheelchair was taken on January 17, 2019 as retaliation for not waiting for a ducat to x-ray, for going down on the yard immediately after being to 701 [*sic*] to request a wheelchair, and that her x-ray be moved to stat [*sic*] due to excruciating pain.  She was told she would have to wait.  Then they had to be the first responders on the yard.  They issued a ducat for January 17, 2019, to take the wheelchair.

Plaintiff had to ride the walker backwards for over 8 weeks and fell several times.  She had to walk on asphalt, and in the chow hall because people pushing her in the walker were threatened with 115's because it was dangerous.  Defendant Attinello told Plaintiff several times that she could have crutches but knowing it was impossible for Plaintiff to use crutches for the distances at the prison, and she could not carry anything.  Plaintiff told defendant Attinello that

putting weight on it felt like further damage was being done.  Her knee got worse and worse.  Instead of bone, it felt like stuff inside was ground up.

Beginning in January 2019, Plaintiff requested an MRI.  The MRI showed that the fracture at the tip of her tibia spines [*sic*] that was visible in the x-ray image but not in the x-ray report had healed, but now both meniscus had been torn.  After the MRI, in June 2019, there was an incident in Plaintiff's cell.  Plaintiff had to report to work to avoid being placed on disciplinary because the problem was not being acknowledged.  Her knee went out completely on June 11, 2019 and she needed assistance and requested to be taken to her cell.  She was cuffed and called in as disruptive.  She frog-hopped until C/O Camarillo [not a defendant] saw what was happening and brought a wheelchair.  Plaintiff was taken to the cage in C program until an IDAP [*sic*] worker came with a wheelchair and returned her to her cell.  Plaintiff couldn't walk and had to have people make calls on her behalf from outside.  She was finally given a wheelchair on June 19, 2019.

On June 3, 2019, Plaintiff saw defendant Attinello and signed a refusal for the medication Lipitor because it is contraindicated for a person with liver problems.  Defendant Attinello then made the Lipitor a "hot med," which meant Plaintiff would have to go to Medline every day to refuse, although there was a progress note in Plaintiff's file previously stating that the medication was not needed.  (ACP at 5:21.)  Defendant Attinello knew Plaintiff could not walk and go to Medline, and that she had not informed Plaintiff that she had made it a "hot med" so that Plaintiff would receive 115's for failure to either pick it up or refuse it.  (Id. at 5:26.)  Plaintiff received 115's that she was told would be dismissed, and then got a 128 which they refused to remove from her C-file.  Plaintiff also received a chrono written by defendant C/O Snider stating that there was nothing wrong with Plaintiff's knee, and that she was "dramatic."  (Id. at 6:4.)  Plaintiff 602'd to have it removed and was denied.  There is an extensive 602 history and reasonable accommodation record that was denied.  Plaintiff put in a co-pay asking to document the bruises she sustained being handcuffed and manhandled for refusing a direct order "to walk" but was never called for an appointment.  (Id. at 6:9.)  Plaintiff had requested a court order for the surgery, and also had to file this because she is awaiting the outcome of her other pending case and will

still require surgery.  Although the Health Care Headquarters' response received on December 8, 2019 states that "on October 24, 2019, a request for services order for a right knee arthroscopy was approved during prospective review," it was previously denied on August 30, 2019 and September 26, 2019.  (Id. at 6:14-16.)  This action was commenced on November 5, 2019 and the date stated by Headquarters' Level Response of surgery approval of October 24, 2019 is questionable since Plaintiff was seen by RN Jackson [not a defendant] on October 31, 2019 requesting if surgery had been approved and at that time it had not been approved.  On November 15, 2019, the outside person (who made calls for Plaintiff to get the wheelchair in June) was phoned by the institution on November 15, 2019 and told that it had not been approved because they "needed more information," which is what Dr. Taylor [not a defendant] told Plaintiff on October 21, 2019.  (Id. at 6:27.)

The Headquarters' Level response, informing Plaintiff that surgery was approved on October 24, 2019, goes on to state that if the appointment does not take place within the time frames outlined by the Health Care Operational Manual, Plaintiff "can utilize the approved process," which she assumes means she can 602.  (Id. at 7:5.)  However, she is hoping to receive an order for a response on her other pending action regarding her false imprisonment and deprivation of rights, and Plaintiff is requesting that she can still request a court order ordering the procedure if necessary.

Plaintiff has begun to have other serious medical concerns due to mobility and weight gain.  She is praying she will be dealing with these issues from home, but it's hard to know, so she felt she had to initiate this action and also because she would not even need surgery if the wheelchair had not been taken away by defendant Attinello on January 17, 2019.  As for defendant Sergeant Alamo, he was the one responsible for hearing the 602 for a wheelchair on January 27, 2019 and stated that Plaintiff was walking in the chow hall, as she had to because she could not ride the walker backwards there.  Also, he was the one who denied removal of the 128 chrono on 115's Plaintiff was told at the hearing would be dismissed.  Plaintiff saw him on October 20, 2019.  As to defendant Espinosa, the former Warden, she signed off on many of Plaintiff's 602's regarding the situation and denied any relief.

Also, Plaintiff has requested her CCI to provide an Olsen review regarding her prior prison term because she cannot be positive, but it recently came to her attention that defendant Nurse Practitioner Valerie Attinello may have been the fiancé or friend of the man that Plaintiff pled guilty to shooting in self-defense in Pacoima in 1990. Plaintiff needs to get the case number and contact the public defender to know for sure the possibility as to a motive. Plaintiff has no legal training and thought she should note it now in case she gets further documentation. There is already evidence to support Plaintiff's Claim #2, retaliation.

If it should work out that the Attorney General orders Plaintiff's release from her illegal unconstitutional custody, Plaintiff had health insurance in 2003 but has been incarcerated ever since then. If she were to get insurance Plaintiff doesn't know if the new insurance would cover a pre-existing condition, or if it takes a long time to hear her case and as she may still need a court order for surgery, she had to file this action. Also in summer 2008 she sprained something in her right knee and had been rehabbing it prior to the fall on the asphalt. She had not needed to seek medical attention for the sprain. The sprain also showed on the MRI.

As relief, Plaintiff states that she may still require a court order for knee repair surgery. She also requests punitive damages.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v.

Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.   Rule 8(a) of the Federal Rules of Civil Procedure

Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions, none of which apply to § 1983 actions.  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002).  Under federal notice pleading, a complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard.

Plaintiff's allegations in the First Amended Complaint are rambling and do not meet Rule 8(a)'s requirement to contain a "short and plain statement of the claim." Plaintiff provides unnecessary information touching on subjects such as her health insurance, her other pending case, and whether defendant Attinello is connected to the man Plaintiff shot in self-defense in 1990. Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support Plaintiff's claim. Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977); also see McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (a complaint must make clear "who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Plaintiff's complaint must give each "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Swierkiewicz, 534 U.S. at 512, with sufficient facts to raise a right to relief above the speculative level. Plaintiff has not satisfied these requirements in the First Amended Complaint. The court will grant Plaintiff leave to file a Second Amended Complaint curing these deficiencies.

It is unclear from the face of the First Amended Complaint whether Plaintiff exhausted her administrative remedies for all of the largely unrelated claims in the complaint before filing this lawsuit. Plaintiff should address this issue more thoroughly in her Second Amended Complaint.

**B.    Doe Defendants**

Plaintiff names the Radiology Report Writer, whose name is unknown, as a defendant. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served until Plaintiff has identified them as actual individuals and

amended his complaint to substitute names for John Doe or Jane Doe.  For service to be successful, the Marshal must be able to identify and locate defendants.

### C.   CCWF Medical Staff

Plaintiff names the "CCWF Medical Staff" as a defendant, without identifying names or attributing any personal participation by individual members of the staff.  Under section 1983, Plaintiff must demonstrate that **each** defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.

In the First Amended Complaint, Plaintiff fails to allege facts showing that any of the individual members of the medical staff, except Nurse Practitioner Attinello, personally acted against her.  Plaintiff may not allege that the "Medical Staff" collectively delayed or denied her medical care.  Plaintiff must demonstrate in her allegations that each Defendant, identified by name, personally acted or failed to act, violating Plaintiff's rights.  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff shall be granted an opportunity to file a Second Amended Complaint, to cure this deficiency.

### D.   Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133,

1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has shown that she had a serious medical need because she fell and injured her knee.  However, Plaintiff has not shown that any of the Defendants acted with deliberate indifference to a substantial risk of serious harm to Plaintiff's health.  To state a medical claim

against a defendant, Plaintiff must <u>name</u> the defendant and allege facts demonstrating that the individual defendant <u>knew</u> that Plaintiff had a serious medical need, <u>knew</u> that Plaintiff was at substantial risk of serious harm to her health, but <u>purposely disregarded</u> the risk and failed to act reasonably causing Plaintiff harm.  Plaintiff must explain what happened in relation to individual defendants, showing how the defendant violated her rights to adequate medical care.

Therefore, Plaintiff fails to state a medical claim under the Eighth Amendment against any of the Defendants.

### E.   **Retaliation – First Amendment Claim**

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  <u>Grenning v. Klemme</u>, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff alleges in the First Amended Complaint that defendant Attinello took her wheelchair away on January 17, 2019 as retaliation for not waiting for a ducat to x-ray and for going down on the yard immediately after being to 701 to request a wheelchair, and that her x-ray be moved to stat due to excruciating pain.  This is not sufficient to state a claim for retaliation. Plaintiff must show that she was exercising a right protected under the First Amendment, and that defendant Attinello acted adversely against Plaintiff *because* she was exercising a protected right, causing Plaintiff injury - or chilling - resulting from defendant Attinello's adverse action against Plaintiff.  Plaintiff must also allege that defendant Attinello's action did not reasonably advance a legitimate correctional goal.  Plaintiff has not done so. Plaintiff fails to demonstrate a causal nexus between the alleged retaliation and any constitutionally protected activity showing

that the retaliatory act was done *because* of the protected activity.  Accordingly, Plaintiff fails to state a cognizable retaliation claim.

**V.     CONCLUSION AND ORDER**

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the First Amended Complaint against any of the Defendants for violating her constitutional or other federal rights.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Plaintiff is granted leave to file a Second Amended Complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 555).

Plaintiff is informed that the court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's First Amended Complaint is DISMISSED for failure to state a claim, with leave to amend;

2.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Second Amended Complaint curing the deficiencies in her claims identified in this order;

4.      Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:19-cv-01579-NONE-GSA-PC; and

5.      Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed in its entirety for failure to state a claim.

IT IS SO ORDERED.

Dated:   __October 29, 2020__                __/s/ Gary S. Austin__
                                             UNITED STATES MAGISTRATE JUDGE