UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGI FAIRCHILD-LITTLEFIELD, | No.  1:19-cv-01579-JLT-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| ATTINELLO, | (ECF Nos. 46, 51) |
| Defendant. | |

Plaintiff is proceeding pro se in this action filed pursuant to 42 U.S.C. § 1983.  The case was transferred to this judge on October 3, 2025.  (ECF No. 63.)

Currently before the Court is Plaintiff's motion for summary judgment, filed March 29, 2023, and Defendant's motion for summary judgment, filed May 22, 2023.  (ECF Nos. 46, 51.)

**I.**

**BACKGROUND**

This action is proceeding against Defendant nurse Valerie Attinello for failure to provide adequate medical care in violation of the Eighth Amendment.

Defendant filed an answer to the complaint on July 19, 2022.  (ECF No. 30.)  On July 21, 2022, the Court issued the discovery and scheduling order.  (ECF No. 31.)

///

1

As stated above, Plaintiff filed a motion for summary judgment on March 29, 2023.  (ECF No. 46.)  Defendant filed an opposition on May 22, 2023.  (ECF No. 50.)

Defendant filed a motion for summary judgment on May 22, 2023.  (ECF No. 51.)  Plaintiff filed an opposition on June 7, 2023, and Defendant filed a reply on June 21, 2023.  (ECF Nos. 56, 57.)

## II.

## LEGAL STANDARD

### A.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In reviewing cross-motions for summary judgment, a court is required to consider each motion on its own merits. Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." Id.

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.      Summary of Complaint**

Plaintiff alleges that she fell and fractured her tibia in December 2018, after which Defendant denied her proper accommodations and treatment and retaliated against her when she raised concerns about her medical care. Specifically, Plaintiff alleges that Defendant denied Plaintiff a wheelchair and instead gave her inadequate accommodations such as crutches, with which Plaintiff could not navigate long distances within CCWF and a walker, which Plaintiff could not use safely due to the nature of her injury.  As a result, Plaintiff incurred an additional injury to her meniscus from the strain of continuing to put weight on her injured leg.

**B.      Statement of Undisputed Facts[1]**

1.      Plaintiff Gigi Fairchild-Littlefield (X27638) is an inmate in the custody of  the California Department of Corrections and Rehabilitation (CDCR), and at all times relevant to the Second Amended Complaint (hereinafter SAC) was incarcerated at the Central California Women's Facility (CCWF).  (SAC, ECF No. 17 at 1.)

2.      Plaintiff is not a medical professional, and has no formal medical training. (Declaration of Judith S. Gronna, Ex. A, Deposition of Plaintiff (Pl.'s Dep.), at 10:25 – 11:1-10.)

---

[1] These facts are deprived from both parties' motions for summary judgment where not subject to dispute.

3.     Defendant V. Attinello is a nurse practitioner (NP) licensed by the State of California.  (Declaration of V. Attinello, N.P. (Attinello Decl.), at ¶ 2.)

4.     Defendant acted under color state law.

5.     NP Attinello served as Plaintiff's primary care physician (PCP) from approximately November 2018 to June 2019.  (Attinello Decl., at ¶ 4.)

6.     In late December 2018, Plaintiff tripped and fell while walking. Plaintiff sustained an abrasion and some bruising to her right knee, but did not seek medical treatment on the date of the injury.  (Pl.'s Dep., at 17:1-9; 17:14-20; 18:14-24.)

7.     Plaintiff had a right to adequate medical care. Prisons are isolated and due to this, the Constitution contains specific prohibitions and protections against cruel and unusual actions against prisoners.

8.     NP Attinello met with Plaintiff on at least seven different occasions, between January 2019 and June 2019, to evaluate and treat Plaintiff's complaints of right knee pain. (Attinello Decl., at ¶¶ 14-15, 22, 24, 26, 28, 30, 31.)

9.     On January 3, 2019, Plaintiff was issued a temporary knee brace and crutches. (Attinello Decl., at ¶ 9.)

10.     Plaintiff voluntarily returned her crutches on January 11, 2019.  (Attinello Decl., at ¶ 10; Pl.'s Dep., at 132:10-22.)

11.     On January 16, 2019, Plaintiff presented to the triage and treatment area (TTA) due to complaints of right knee pain.  (Attinello Decl., at ¶ 11.)

12.     Dr. Khoo ordered an x-ray of Plaintiff's right knee on January 16, 2019. The x-ray impression was that there was no acute fracture, dislocation, or acute joint abnormality. (Attinello Decl., at ¶ 12; Declaration of Dr. Edward Younger, III (Younger Decl.), Ex. B – Record Review Report, pp. 2-3.)

13.     The x-ray report of the image on January 16, 2019 does not contain the tibia spine fracture or the 1991 patella break.

14.     The January 16, 2019 x-ray did not show a fracture to Plaintiff's right tibia, and Dr. Khoo did not diagnose Plaintiff with a fractured right tibia.  (Pl.'s Dep., at 47:1-13;

4

Younger Decl., at ¶ 5.)

15.   Dr. Khoo issued Plaintiff a two-week temporary wheelchair order on January 16, 2019.  (Pl.'s Dep., at 134:1-3; Attinello Decl., at ¶ 13.)

16.   On January 17, 2019, Plaintiff saw NP Attinello for a medical visit.  (Attinello Decl., at ¶ 14.)

17.   During the January 17, 2019 visit, NP Attinello conducted a physical exam of Plaintiff. NP Attinello performed a Lachman test, a McMurray test, and an anterior/posterior drawer test of Plaintiff's right knee, which were all negative. These were tests used to assess possible damage to Plaintiff's ligaments and cartilage in her right knee joint. NP Attinello also reviewed the January 16, 2019 x-ray, which was essentially negative, and did not observe any swelling to Plaintiff's right knee.  (Attinello Decl., at ¶¶ 15, 17.)

18.   Plaintiff was not wearing a knee brace during the January 17, 2019 visit, and reported that she had not needed it. Plaintiff further reported that she did not want any pain medication, and was able to perform squats and stretches with her knee. NP Attinello observed Plaintiff walk into the examination room, and move on and off the examination table, independently.  (Pl.'s Dep., at 79:11-14, 80:8-12, 82:18-22; Attinello Decl., at ¶¶ 16, 18.)

19.   On January 17, 2019, NP Attinello offered Plaintiff crutches, which Plaintiff refused.  (Pl.'s Dep., at 132:10-22; Attinello Decl., at ¶ 19.)

20.   Because Plaintiff refused to accept crutches, NP Attinello issued Plaintiff a walker. (Attinello Decl., at ¶ 19.)

21.   NP Attinello offered Plaintiff crutches and/or a walker to help her keep weight off of her right knee.  (Attinello Decl., at ¶ 19.)

22.   On January 17, 2019, NP Attinello ordered that Plaintiff have a physical therapy consultation within forty-five days. The purpose of physical therapy was to ultimately help alleviate Plaintiff's alleged pain.  (Attinello Decl., at ¶ 19.)

23.   Plaintiff had a follow-up evaluation with Dr. Khoo on January 31, 2019, regarding her use of the temporary walker.  (Attinello Decl., at ¶ 20.)

24.   During the January 31, 2019 visit, Plaintiff neither used her walker upon entering

5

the examination room nor wore any kind of right knee support.  (Attinello Decl., at ¶ 20.)

25.     Plaintiff requested a wheelchair instead of a walker during the January 31, 2019 visit. Dr. Khoo denied the request, noting that a wheelchair was not indicated. Dr. Khoo further advised that Plaintiff should wear her right knee brace and participate in physical therapy as ordered.  (Attinello Decl., at ¶ 20.)

26.     CCWF's Reasonable Accommodation Panel (RAP) denied Plaintiff's request for a wheelchair on January 31, 2019. In the RAP response, it was noted that Plaintiff was able to move around utilizing her temporary walker, and there was no indication for a wheelchair.  (Pl.'s Dep., Ex. C.)

27.     Plaintiff participated in an initial physical therapy session on February 7, 2019. The physical therapist noted that Plaintiff's prognosis was not good, due to her inappropriate behavior and general lack of cooperation.  (Pl.'s Dep., at 105:4-17; Attinello Decl., at ¶ 21.)

28.     On February 7, 2019, Correctional Officer (CO) Snider issued a general chrono regarding Plaintiff's ambulatory condition. CO Snider documented that Plaintiff had walked into the medical clinic without her assigned walker, and appeared to be overdramatic in front of medical staff with regards to her limp.  (Pl.'s Dep., Ex. D.)

29.     Plaintiff next met with NP Attinello on February 21, 2019. Plaintiff ambulated independently to the examination room without apparent difficulty.  Plaintiff refused physical examination, and denied performing exercises for her knee as previously recommended. Plaintiff maintained that she had a fractured tibia, that physical therapy would not be effective for her condition, and that an MRI was warranted.  (Attinello Decl., at ¶¶ 22-23.)

30.     NP Attinello noted that an MRI was not currently indicated, but that this finding could be reevaluated should Plaintiff's condition change or upon her completion of physical therapy. NP Attinello ordered that Plaintiff continue with physical therapy, and maintain her temporary walker order.  (Attinello Decl., at ¶ 23.)

31.     NP Attinello evaluated Plaintiff on April 10, 2019, in connection with her complaints of right knee pain.  Plaintiff did not present with any swelling to her right knee, and had negative McMurray and anteroposterior drawer tests. Plaintiff had a non-antalgic gait, but

6

maneuvered up and off the examination room table without difficulty. Although Plaintiff reported that she could not walk at times, she also stated that she worked daily emptying the trash, did not consistently wear her knee brace, and did not take any pain medication.  (Attinello Decl., at ¶ 24.)

32.    NP Attinello denied Plaintiff's request for an MRI on April 10, 2019, as it was not indicated at that time and her condition was stable. NP Attinello ordered that Plaintiff complete her physical therapy and then return to the clinic.  (Attinello Decl., at ¶ 25.)

33.    Plaintiff completed physical therapy for her right knee on April 11, 2019. (Attinello Decl., at ¶ 26.)

34.    NP Attinello medically evaluated Plaintiff for chronic right knee pain on April 23, 2019. Plaintiff reported that she had sub-patellar right knee pain, had completed physical therapy with no improvement, and used no assistive devices. NP Attinello ordered a right knee MRI, and advised Plaintiff to return to the clinic after the MRI was performed.  (Attinello Decl., at ¶¶ 26-27.)

35.    On May 8, 2019, NP Attinello met with Plaintiff in connection with her request for a re-evaluation of her right knee x-ray, or for further imaging studies to be performed. Plaintiff declined physical examination.  NP Attinello advised that Plaintiff had a pending MRI order, and recommended that she continue with knee exercises and activity modification until the MRI could be performed.  (Attinello Decl., at ¶ 29.)

36.    An MRI of Plaintiff's right knee was performed on May 21, 2019.  (Attinello Decl., at ¶ 29; Younger Decl., at ¶ 6.)

37.    The May 21, 2019 MRI noted evidence for medial and lateral meniscus tears and moderate arthritis of the lateral and patellofemoral compartments. The MRI also showed evidence of a Baker's cyst, which is often seen with degenerative knee conditions.  (Younger Decl., at ¶ 6.)

38.    The May 21, 2019 MRI did not show evidence that Plaintiff had sustained any type of fracture, either of the acute type or a stress reaction.  (Younger Decl., at ¶ 6.)

39.    Plaintiff next met with NP Attinello on June 3, 2019, to review the findings from the May 21, 2019 MRI.  Plaintiff declined a physical examination, and did not use any assistive

devices during the encounter.  Plaintiff indicated that she did not wish the undergo knee surgery. NP Attinello ordered that Plaintiff continue knee exercises.  (Attinello Decl., at ¶ 30.)

40.     Plaintiff's last visit with NP Attinello regarding her right knee condition occurred on June 11, 2019.  Plaintiff reported that she could not bear weight on her right knee, and walked with dramatic antalgia.  (Attinello Decl., at ¶ 31.)

41.     On June 11, 2019, Plaintiff refused a physical examination of her right knee. Plaintiff also refused both a walker and cane when offered to her, despite being advised of the risks.  (Attinello Decl., at ¶ 31.)

42.     On June 11, 2019, a licensed vocational nurse (LVN) documented that Plaintiff was seen walking in front of the medical clinic with a steady gait. The LVN further noted that Plaintiff did not appear to have any difficulty with ambulating.  (Attinello Decl., at ¶ 33.)

43.     The RAP issued Plaintiff a temporary wheelchair on June 19, 2019.  (Attinello Decl., at ¶ 34.)

44.     On January 29, 2020, Plaintiff ultimately underwent surgery for her right knee lateral meniscal tear and osteoarthritis. This included a medial and lateral meniscectomy, as well as a tricompartmental debridement synovectomy.  (Pl.'s Dep., at 127:15-19; Attinello Decl., at ¶ 35; Younger Decl., Ex. B – Record Review Report, p. 2.)

45.     Plaintiff's diagnoses include degenerative medial and lateral meniscus tears, and osteoarthritis of the right knee. There is no medical evidence that Plaintiff sustained any type of acute or stress fracture of the right knee area.  (Younger Decl., at ¶ 7.)

### C.     Plaintiff's Motion for Summary Judgment

As previously stated, Plaintiff alleges that Defendant nurse Attinello was deliberately indifferent to her serious medical needs based on the denial of a wheelchair for her right knee condition in 2019.  Plaintiff argues summary judgment should be granted in her favor because Defendant nurse Attinello acted with deliberate indifference to her stress fracture at the top of her tibia spine by failing to provide a wheelchair.

To maintain an Eighth Amendment medical claim, an inmate must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

8

Estelle v. Gamble, 429 U.S. 97, 104 (1976). Where, there is a dispute about treatment options, the inmate must demonstrate that the chosen course of treatment was "medically unacceptable under the circumstances" and chosen in "conscious disregard of an excessive risk" to her health. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to Sanchez'[s] serious medical needs.").

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay or intentionally interfere with medical treatment." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)). "In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); accord Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

"The indifference to a prisoner's medical needs must be substantial. Mere indifference, negligence, or medical malpractice will not support this claim. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." Lemire, 726 F.3d at 1081-82; Cano v. Taylor, 739 F.3d 1214, 1217 (9th Cir. 2014). Moreover, "[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Snow v.

McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez, 891 F.2d at 242).

Plaintiff's motion for summary judgment should be denied.  Plaintiff submits that her serious medical condition was a fractured right tibia.  (ECF No. 46 at 4, 7-8.)  Plaintiff argues the alleged fracture, as well as having to put weight on her right knee, proximately caused an injury to her right meniscus.  However, Plaintiff submits no medical evidence beyond her own speculative, lay opinion that she suffered from a fractured right tibia when Defendant Attinello treated her in *2019*.  (Id. at 5-6.)  Indeed, on the contrary, the specialist that performed Plaintiff's right knee surgery on January 29, 2020, did not diagnose Plaintiff with a fracture of the right knee or state that Plaintiff required surgery because she did not use a wheelchair.  (ECF No. 46 at 24-25; Pl. Dep. at 127:20-25-128:1-2, 129:2-11.)  Moreover, Defendants have submitted expert testimony by an outside medical professional in field of orthopedic surgery who opines that none of Plaintiff's imaging studies taken in 2019 reveal any type of fracture of the right knee area. (Younger Decl. at ¶¶ 5-7.)

Plaintiff further argues that pursuant to the Armstrong Remedial Plan, durable medical equipment (DME) is available free to prisoners, such as herself.   (ECF No. 46 at 3, 11.)  Plaintiff further submits that because wheelchairs were readily available at CCWF, she should have been provided one upon request.  (Id. at 11.)  However, Plaintiff submits no evidence that she is a member of the Armstrong class,[2] or that a wheelchair was justified under the "medical supply formulary utilization management policy."  (Id. at 3.)  Nor does Plaintiff provide undisputed evidence that a wheelchair was medical necessary given the circumstances.

Rather, Plaintiff argues that a walker was "contraindicated and dangerous," which she could only use while seated, and the denial of a wheelchair caused her physical injury.  (Id. at 3, 7.)  However, the fact that Plaintiff failed to properly use the walker does not amount to deliberate indifference on the part of Defendant Attinello.  See Mintun v. Corizon Health, Inc., No. 1:21-cv-

---

[2] Furthermore, violations of the Armstrong Remedial Plan do not provide an independent basis for damages in this Court.  Roberts v. California Dep't of Corr. & Rehab., No. 2:12-CV-0247 KJM AC, 2014 WL 2109925, at *8 (E.D. Cal. May 20, 2014). Violations of the Armstrong Remedial Plan must be addressed through the procedures provided by that plan. Id. (citing Frost v. Symington, 197 F.3d 348, 358–59 (9th Cir. 1999); see also Crayton v. Terhune, 2002 WL 31093590 (N.D. Cal. 2002); Jamison v. Capello, 2013 WL 6182035 *5 (E.D. Cal. 2013); Weathers v. Hagemeiister–May, 2014 WL 309444 6 (E.D. Cal. 2014)).

00124-BLW, 2023 WL 1392053, at *11 (D. Idaho Jan. 31, 2023).  In addition, it is undisputed that Plaintiff was observed on several occasions utilizing the walker.  (UF 26, ECF No. 46 at 21; Pl. Dep., Ex. D.)  While Plaintiff may have believed the using the walker instead of wheelchair caused further injury, she is not qualified to provide such medical opinion and there is no other independent medical evidence to support such contention.  (Pl. Dep. at 10:25-11:1-10; Younger Decl. at ¶ 8.)

In addition, Plaintiff has failed to submit undisputed evidence that the denial of a wheelchair was based on anything other than Defendant Attinello's reasonable medical opinion.  The mere fact that Attinello revoked a previous physician's order for a wheelchair does not demonstrate deliberate indifference.  Indeed, Plaintiff's allegations, at most, amount to a difference of opinion among doctors and/or between Plaintiff and nurse Attinello which does not give rise to a deliberate indifference.  Further, Defendant has presented expert medical evidence that a wheelchair was not required for Plaintiff's condition when she was evaluated by nurse Attinello, and that the assistive device and treatment provided by Attinello was preferable under the circumstances.  (Younger Decl. at ¶¶ 5-8.)

Finally, Plaintiff request for punitive damages should also be denied.  The dismissal of Plaintiff's claim for punitive damages is in order, as punitive damages may be awarded in a section 1983 suit only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  There is no indication whatsoever that Defendant's alleged wrongdoing rose to this requisite high level of culpability.  Accordingly, Plaintiff's motion for summary judgment should be denied.

### D.    Defendant's Cross-Motion for Summary Judgment

Defendant argues that "the undisputed evidence shows that a wheelchair was not medically necessary for Plaintiff's knee condition[,]" and "Plaintiff's disagreement with the decision to forego a wheelchair amounts to nothing more than a difference of medical opinion, which is not constitutionally actionable."  (ECF No. 51-3 at 5.)

As an initial matter, the parties do not dispute that Plaintiff presented with a serious

11

medical need.  Thus, the issue therefore is whether Defendant nurse Attinello knew about Plaintiff's serious medical need and was deliberately indifferent by failing to provide a wheelchair.

The evidence demonstrates that Attinello's decision not to issue Plaintiff a wheelchair was not deliberately indifferent to Plaintiff's medical condition.  It is undisputed that Defendant Attinello met with Plaintiff on at least seven different occasions, between January 2019 and June 2019, to evaluate and treat Plaintiff's complaints of right knee pain.  (UF 8.)  Contrary to Plaintiff's contention, the undisputed evidence demonstrates that Defendant Attinello neither knew, nor had reason to know, that Plaintiff sustained a fractured tibia.  (UF 12, 13, 14, 17, 38, 45.)  No x-rays or other medical documents reflected Plaintiff sustained a fractured tibia when examined in 2019.  (Id.)

Defendant submits the declaration of Doctor Edward Young, III, who reviewed Plaintiff's relevant medical records and opines as follows:

 I reviewed an x-ray of [Plaintiff's] right knee, taken on January 16, 2019.  Based on my review, no obvious abnormalities of the right knee were present.  There was no indication that [Plaintiff] sustained any type of fracture to her right knee or tibia.  It was therefore medically appropriate to offer [Plaintiff] crutches to take some of the weight off of the right knee.  In lieu of crutches, which [Plaintiff] refused, it was also medically appropriate to issue [Plaintiff] a walker.

I further reviewed an MRI of [Plaintiff's] right knee, taken on May 21, 2019.  Based on my review, there was evidence of medical and lateral meniscus tears and moderate arthritis of the lateral and patellofemoral compartments.  [Plaintiff] also had a Baker's cyst, which is often seen with degenerative knee conditions.  There was no evidence that [Plaintiff] had any type of fracture[3], either of the acute type or a stress reaction.

It is my professional medical opinion that [Plaintiff's] diagnoses related to her complaints of right knee pain include degenerative medical and lateral meniscus tears, and osteoarthritis of the right knee.  There is no medical evidence that [Plaintiff] sustained any type of acute or stress fracture of the right knee area.

In summation, after a review of the provided materials, the treatment [Plaintiff] received for her complaints of right knee pain was medically acceptable.  A wheelchair was not medically necessary for [Plaintiff's] condition; nor would the failure to provide [Plaintiff] with a wheelchair have made her condition any worse or caused her further injury.  [Plaintiff's] treatment was within the standard of care for similar complaints and

---

[3] This includes in the bones of the proximal tibia, distal femur, or patella.

diagnoses.

(Younger Decl. ¶¶ 5-8.)

On January 17, 2019, Plaintiff saw NP Attinello for a medical visit.  (UF 16.)  During the January 17, 2019 visit, Attinello conducted a physical exam of Plaintiff.  Attinello performed a Lachman test, a McMurray test, and an anterior/posterior drawer test of Plaintiff's right knee, which were all negative.  (UF 17.)  These were tests used to assess possible damage to Plaintiff's ligaments and cartilage in her right knee joint.  (Id.)  Attinello also reviewed the January 16, 2019 x-ray, which was essentially negative, and did not observe any swelling to Plaintiff's right knee.  (Id.)  Plaintiff was not wearing a knee brace during the January 17, 2019 visit, and reported that she had not needed it.  (UF 18.)  Plaintiff further reported that she did not want any pain medication, and was able to perform squats and stretches with her knee.  Attinello observed Plaintiff walk into the examination room, and move on and off the examination table, independently.  (Id.)  On this same date, Attinello offered Plaintiff crutches, which Plaintiff refused, and Plaintiff was therefore issued a walker.  (UF 19, 20.)  Further, both a doctor and the RAP panel agreed with Attinello's course of treatment.  On January 31, 2019, Dr. Khoo denied Plaintiff's request for a wheelchair noting that it was not medically indicated and advised Plaintiff to wear her right knee brace and participate in physical therapy as ordered.  (UF 25.)

Although Plaintiff desired the use of wheelchair, when Defendant Attinello offered Plaintiff alternative ambulatory devices, to alleviate some of the weight on her knee, Plaintiff either refused or failed to use them as directed.  (UF 18, 19, 20, 24, 41.)  There is no evidence that Plaintiff was physically unable to use a walker, or that it was otherwise dangerous to use in her condition.  (UF 21, 26, 28.)  Thus, Defendant Attinello's knowledge that Plaintiff wanted a wheelchair, or even evidence that she knew it hurt Plaintiff to walk, is insufficient to support a conclusion that she ignored a known risk to Plaintiff's safety.  Furthermore, the fact that Plaintiff was previously and subsequently issued a temporary wheelchair accommodation does not establish deliberate indifference by Attinello.  Plaintiff cannot provide medical opinion as to the necessity of the accommodation. Fed. R. Evid. 702; see also Snow v. McDaniel, 681 F.3d at 987;

13

Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988) (appropriate standard of care for medical treatment can only be established by expert medical testimony; inmate plaintiff's allegations supported only by lay opinions failed to present a triable issue of fact).  Moreover, even if there was a difference of opinion among doctors about the appropriate accommodations for Plaintiff, such difference of medical opinion is insufficient as a matter of law to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d at 332.  Where there is a difference of opinion, Plaintiff can prevail only if the course of treatment defendant chose was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to plaintiff's health or safety.  Jackson, 90 F.3d at 332.  The record in this case is devoid of evidence that Attinello's decision not to issue a wheelchair accommodation was "medically unacceptable."

Defendant Attinello also provided Plaintiff with physical therapy to help strengthen her knee and alleviate her alleged pain. (UF 22.)  Plaintiff participated in an initial physical therapy session on February 7, 2019.  The physical therapist noted that Plaintiff's prognosis was not good, due to her inappropriate behavior and general lack of cooperation. (UF 27.)  Thereafter, on April 23, 2019, Attinello ordered an MRI of Plaintiff's right knee, which took place on May 21, 2019. (UF 34, 36.)  The MRI revealed medial and lateral meniscus tears, as well as osteoarthritis of the right knee. (UF 37.)

Construing the evidence in the light most favorable to Plaintiff, the undersigned finds there is no triable issue as to whether Defendant Attinello acted with deliberate indifference to Plaintiff's right knee pain. Plaintiff has established nothing more than a mere difference of opinion regarding the medical need for a wheelchair in 2019, which fails as a matter of law. Based on the evidence presented, the treatment Plaintiff received for her complaints of right knee pain was medically acceptable under the circumstances, and Defendant Attinello is entitled to summary judgment.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.       Plaintiff's motion for summary judgment be DENIED; and

2.       Defendant's cross-motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21)** days after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 14, 2026**

STANLEY A. BOONE
United States Magistrate Judge

15